**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NCO ACQUISITION, LLC, et al.,

    Plaintiffs,

v.                                                Case No. 12-10122

RICHARD D. SNYDER, et al.,

    Defendants.
                                               /

**AMENDED OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS AND CANCELLING THE JUNE 6, 2012 MOTION HEARING**[1]

    Before the court is a motion to dismiss filed by Defendants Governor Richard Snyder, State Treasurer Andy Dillon, and Emergency Manager of the Detroit Public Schools Roy Roberts, in which Defendants contend that the court should decline to exercise jurisdiction over this declaratory judgment action on various grounds. The motion alternatively argues that Plaintiffs have failed to state a claim against Governor Snyder. The motion has been fully briefed, and the court finds a hearing to be unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant in part Defendants' motion and dismiss the claims without prejudice against Governor Snyder. The court, however, will deny the motion to the extent it seeks dismissal on abstention grounds.

---

    [1]This amended order corrects a formatting error contained on page ten of the court's June 6, 2012 order.

## I. BACKGROUND

Plaintiffs are four real estate companies that entered into lease and sublease agreements with the Detroit Public Schools ("DPS") between 2002 and 2004. (First Amend. Compl. ¶¶ 9-23, Dkt. # 18.) In each agreement, DPS agreed to rent properties from Plaintiffs for a finite period of time, normally ten years. (*Id.*) In September 2011, following Governor Snyder's appointment of Roberts to the position of Emergency Manager of DPS, Roberts unilaterally modified the relevant lease agreements to include a provision that permitted him to terminate the leases after sixty days notice, and notified Plaintiffs that the lease agreements would be terminated on November 30, 2011. (*See, id.* ¶¶ 30-41.) On November 30, 2011, the original date of termination, Plaintiffs NCO Acquisition, LLC, FK South, LLC, and Lothrop Associates, LP, received revised notices of termination, indicating that the leases would be terminated on January 30, 2012. (*Id.* ¶¶ 42-46.) Plaintiff FK North, LLC, received a letter the same day rescinding the September 2011 notice of termination but not establishing a new termination date. (*Id.* ¶ 47.)

In his initial correspondence to Plaintiffs, Roberts cited Michigan's Local Government and School District Fiscal Accountability Act (the "Act"), Mich. Comp. Laws § 141.1501-.1531, as the source of his authority to unilaterally modify, and ultimately terminate, the lease agreements. (First Amend. Compl. ¶ 30.) Enacted on March 16, 2011, and taking effect the same day, the Act establishes, *inter alia*, the process by which the Governor of Michigan may declare a financial emergency in a given local government or school district, *see* Mich. Comp. Laws §§ 141.1512-.1515, and the authority of the Governor to "appoint an emergency manager to act for and in the place

and stead of the governing body and the office of chief administrative officer of the local government," *id.* at § 141.1515(4). At issue in this case is the Act's grant of broad authority to an emergency manager "to rectify the financial emergency and to assure the fiscal accountability of the local government." *Id.* Specifically, in their first amended complaint, Plaintiffs seek a declaratory judgment that § 141.1519(1)(j), which authorizes an emergency manager to "[r]eject, modify, or terminate 1 or more terms and conditions of an existing contract," violates the Contracts Clause of Article I, Section 10 of the United States Constitution and the Takings Clause of the Fifth Amendment, both as written and as applied (by Roberts) to the lease agreements.

Defendants have moved to dismiss the complaint, asserting three bases on which the court should decline to exercise jurisdiction over the case: (1) the *Burford* abstention doctrine; (2) the doctrine enunciated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); and (3) the Declaratory Judgment Act's grant of discretion to a district court to decline jurisdiction in a declaratory judgment action. Defendants argue separately that Governor Snyder is not a proper party.

## II. DISCUSSION

### A. *Burford* Abstention

Defendants, citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), argue that the court should abstain from exercising jurisdiction to avoid disrupting the State of Michigan's efforts to develop a coherent policy to effectively address the fiscal crises local governments and school districts are presently experiencing in the State. *Burford* abstention

>provides that where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result on the case then at bar"; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Adrian Energy. Assocs. v. Mich. Public Serv. Comm'n*, 481 F.3d 414, 423 (6th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)). The doctrine is fundamentally concerned with preventing "federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." *Id.* (citing *New Orleans Pub. Serv., Inc.*, 491 U.S. at 361-64; *Bath Mem. Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1014-15 (1st Cir. 1988)). The balance struck between a "strong federal interest in having certain classes of cases . . . adjudicated in federal court" and a state's interest in "maintaining uniformity in the treatment of an essentially local problem" rarely favors abstention, as "the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (citations and quotations marks omitted).

Moreover, the federalism and comity concerns from which the doctrine arose do not provide the State with a shield against all litigation that may result in a federal court striking down a state administrative or regulatory regime as unconstitutional. *See Zablocki v. Redhail*, 434 U.S. 374, 379-80 n.5 (1978) ("[T]here is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the

4

overturning of a state policy."); *Bath Mem. Hosp.*, 853 F.2d at 1013 ("The threatened interference [does] not consist merely of the threat that the federal court might declare the *entire state system* unconstitutional; that sort of risk is present whenever one attacks a state law on constitutional grounds in a federal court."). *Burford* abstention presupposes the constitutionality of the administrative or regulatory regime, and seeks to mitigate the possibility that federal courts might "create a parallel, additional, federal, 'regulatory review' mechanism" that would interfere with the State's administration of a *constitutional* state regime aimed at developing a coherent policy to address a substantially local concern. *Bath. Mem. Hosp.*, 853 F.2d at 1013.

Even if the court were to assume, *arguendo*, that Plaintiffs' complaint implicates "the proceedings or orders of [a] state administrative agenc[y]," *Adrian Energy. Assocs.*, 481 F.3d at 423—a threshold issue untouched here by the parties, *see Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 716 (6th Cir. 2002) (reversing the district court's stay on *Burford* abstention grounds because no proceeding or order of an administrative agency was involved in the dispute)—*Burford* abstention is not appropriate in this case.

First, no difficult questions of state law are present that would outweigh the strong federal interest in adjudicating Plaintiffs' constitutional challenge. Plaintiffs have not asserted any state-law claims, and the underlying law at issue is unambiguous in its grant of authority to an emergency manager to "[r]eject, modify, or terminate 1 or more terms and conditions of an existing contract." Mich. Comp. Laws § 141.1519(1)(j). Thus, the case falls well within a federal court's area of expertise of hearing federal constitutional challenges to legislative enactment by states.

Second, adjudication of Plaintiffs' declaratory judgment request will not impermissibly disrupt the State's effort to formulate a comprehensive and uniform regime to restore fiscal order. The heart of the first amended complaint is a facial challenge to the Act's grant of authority to emergency managers to modify existing contracts, and although Plaintiffs also argue Roberts's specific invocation of the Act's grant of authority violated the Constitution, adjudication of this latter claim does not demand a highly "individualized review of fact- (or cost-) specific regulatory decision making." *Bath Mem. Hosp.*, 853 F.2d at 1015. Plaintiffs contend that Roberts's decision to modify and terminate the lease agreements violates the Constitution because the Act delegates legislative power to emergency managers without any limiting standards, (Compl. ¶¶ 52, 71), and does not require emergency managers "to abide by the same restrictions as the Legislature in order to constitutionally effectuate an impairment of a contract," (Compl. ¶ 56). Such an argument challenges the very structure of the Act, not the specific fact-based variables that underlie a particular manager's decision to modify or terminate contractual agreements. See *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 474 (1st Cir. 2009) (finding *Burford* abstention inappropriate where "the heart of plaintiffs' action lies in the constitutional challenge to [an administrative agency's] decision-making process as a whole, and not to the reasonableness of their [sic] particular determinations"). Where no substantial inquiry beyond the four corners of a legislative enactment is necessary, the Supreme Court has held that a case will "not unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 363. Any threat of disruption to the State's ability to efficaciously

address municipal fiscal crises caused by this case is solely based on the risk that the court may determine that the Act's grant of authority to modify existing contracts is unconstitutional. Such a risk is obviously inherent whenever a litigant challenges the constitutionality of state law in federal court and is not the type of disruption that *Burford* abstention is aimed at mitigating. *See id.* (quoting *Zablocki*, 434 U.S. at 380 n.5).

Accordingly, Defendants' claim that an adjudication unfavorable to the State will strike at the heart of the State's ability to restore fiscal order is unpersuasive. The principles of *Burford* are inapplicable to this case and abstention on *Burford* grounds is not warranted.

### B. *Colorado River* Doctrine

Defendants next argue that the court should dismiss the complaint pursuant to the *Colorado River* Doctrine. Like *Burford*, the *Colorado River* doctrine creates a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. Unlike *Burford*, the doctrine is not principally based on concerns for federal-state relations, but instead on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Under the doctrine, "a district court may sometimes be justified in abstaining from exercising jurisdiction in deference to a parallel state-court proceeding." *Great Earth Cos. v. Simons*, 288 F.2d 878, 886 (6th Cir. 2002). The following factors have been identified by the Supreme Court and the Sixth Circuit as relevant to a district court's consideration of whether abstention is appropriate under *Colorado River*:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir.1998) (citations omitted). A threshold "requirement for application of [the] *Colorado River* doctrine, however, is the presence of a *parallel*, state proceeding." *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). A state-court proceeding is not necessarily parallel to a federal proceeding merely because it arises out of the same basic facts as the federal proceeding. *See Baskin v. Bath Twp. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994). "In deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, *not those that might have been raised*." *Id.* (emphasis added). The court must examine the qualitative nature of the claims raised in the state and federal proceedings to determine whether there exists an "identity of parties and issues" so as to make the proceedings parallel. *Id.* Generally, "when the state and federal cases present different theories of recovery, courts do not . . . characterize the proceedings as parallel." *Gentry v. Wayne Cnty.*, No. 10-11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010) (internal quotation marks and citations omitted).

Here, despite seeking to invoke an extraordinary exception to the court's "nearly unflagging" obligation to exercise the jurisdiction given to it, Defendants have not proffered pleadings or any other documentation from the three state-court cases to which they refer to in order to substantiate the argument that these proceedings are

8

parallel. Supplementation of the record is unnecessary though, as both sides agree that the state cases "are for back rent only and do not specifically raise the constitutionality of [the Act], nor the validity of the terminations of each lease." (Defs.' Br. Supp. Mot. Dismiss 10, Dkt. # 19; *see also* Pls.' Resp. Opp'n to Defs.' Mot. Dismiss 13, Dkt. # 21 ("[T]he state cases are limited to the discrete issue of unpaid rent for the period that the DPS occupied space and only include claims for breach of contract and account state.").) It is evident from the parties' characterizations of the issues in the state cases that the claims in those cases are substantively and temporally distinct from the constitutional challenge in this case. They are based only upon DPS's alleged failure to pay rent, and predate any decision by Roberts to modify and terminate the lease agreements. Put simply, save for arising out of the same lease agreements ultimately terminated by Roberts, the state-court proceedings do not involve the same basic facts as this case and are qualitatively different in that they assert state law contract claims unrelated to Roberts's authority to terminate the lease agreements. Thus, no identity of issues exists and resolution of the state court cases will not resolve Plaintiffs' constitutional challenge.

Defendants' assertion that Plaintiffs could easily amend their respective state-court complaints to incorporate the constitutional challenge to the Act does not alter the court's conclusion that the proceedings are not parallel. Parallel-proceeding analysis under *Crawley* and *Baskin* does not turn on whether the state court proceedings could be modified to incorporate the claims asserted in the federal proceeding. Instead, a district court must compare the claims actually raised in the federal and state proceedings, without consideration of what claims *could* have been, or may yet be

9

raised in the state court. *Crawley*, 744 F.2d at 31 ("While it may be true . . . that [the state case] *could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state case], as it *currently* exists, *is* a parallel, state-court proceeding."). Because the claims actually raised in the state-court proceedings are fundamentally different from the constitutional claim in this case, dismissal pursuant to the *Colorado River* doctrine is not warranted.

### C. Declaratory Judgment Act

Plaintiffs limit their request for relief to a declaratory judgment that the Act's provision authorizing an emergency manager to modify a contract contravenes the United States Constitution. Under the Declaratory Judgment Act, a district court may "[i]n a case of actual controversy within its jurisdiction . . . declare the rights of and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Exercise of jurisdiction in a declaratory judgment action, however, is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (stating that the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"). Guiding a district court's determination as to whether to hear such a case are the following factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide a arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). In spite of Defendants' contentions to the contrary, the court finds each of the factors militate in favor of exercising jurisdiction in this case.

As to the first and second factors, a declaratory judgment will both settle the controversy between the parties and clarify the constitutionality of Mich. Comp. Law § 141.1519(1)(j). The court does not accept Defendants' argument that a declaratory judgment will not settle this controversy simply because Plaintiffs may at some point in the future seek damages related to the termination of the lease agreements. Such an argument, logically extended, leads to an irrational conclusion: a declaratory judgment *never* settles a controversy where damages or other relief may be sought down the road. In its current form, the controversy between Plaintiffs and Defendants will be substantially settled by a declaratory judgment. Additionally, there is little concern that this action is simply a "race to res judicata." As is discussed in more detail above, there exist no other proceedings in which the termination of the lease agreements have been raised, and Defendants' contention that Plaintiffs' brought the constitutional challenge in federal court to avoid state-court adjudication of the constitutional claim is, without more, not a sufficient basis on which to decline jurisdiction.

Neither of the final two factors weigh against exercising jurisdiction. Any friction caused by this case will be no greater than the friction necessarily created when a federal court hears a constitutional challenge to a state law. Such friction is inherent in a dual-federalism system. In *Gregory v. Ashcroft*, 501 U.S. 452 (1991), the Supreme Court pointed to Federalist No. 28, to make the point:

11

> "[I]n a confederacy the people, without exaggeration, may be said to be entirely the masters of their own fate. Power being almost always the rival of power, the general government will at all times stand ready to check the usurpations of the state governments, and these will have the same disposition towards the general government. . . . *If [the people's] rights are invaded by either, they can make use of the other as the instrument of redress*."

501 U.S. at 459 (emphasis added) (citing The Federalist No. 28, at 180-81 (Alexander Hamilton) (Clinton Rossiter ed., 1961).  Finally, although the state court proceedings may offer an adequate remedy in the form of a state-court declaratory judgment, Defendants have not shown that such remedy is "better or more effective" than the remedy Plaintiffs seek here.  Accordingly, a balancing of the five factors supports exercising jurisdiction over Plaintiffs' complaint.

### D.  GOVERNOR SNYDER AS A PARTY

Defendants argue that if abstention is not appropriate, Plaintiffs have failed to state a claim against Governor Snyder.  The court agrees.  To state a claim upon which relief may be granted, a complaint must allege enough facts that, when assumed true, "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), by "stat[ing] a claim to relief that is plausible on its face," *id.* at 570.  A claim is facially plausible when the plaintiff pleads facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than showing only "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  Here, the complaint makes one fleeting reference to Governor Snyder.  In paragraph twenty-nine, Plaintiffs allege that "Governor Rick Snyder appointed Defendant Roberts to replace Robert Bobb as the District's Emergency Manager."  (Compl. ¶ 29.)  This

allegation alone does not support a reasonable inference that Governor Snyder, while acting under the color of state law, violated the Contracts and Takings Clauses of the United States Constitution.

Although not entirely clear from the complaint or Plaintiffs' response brief, Plaintiffs seem to suggest that Governor Snyder is an appropriate defendant in this case simply because the Michigan Constitution vests in a governor the authority to execute and enforce the laws of Michigan. (*See* Pls.' Resp. Opp'n to Defs.' Mot. Dismiss 16-17 ("If this Court is to decide the constitutionality of [the Act] 'as written,' Governor Snyder, in his official capacity, is an appropriate party. It seems logical that Governor Snyder would have an interest in defending the constitutionality of the legislation 'as written.'").) Even assuming that a governor would have an interest in the outcome of such a case, a governor's constitutional duty to enforce the laws of the state is generally not a sufficient basis on which to name the governor in a lawsuit challenging the constitutionality of a state law. *See Children's Healthcare is a Legal Duty, Inc. v. Deters* 92 F.3d 1412 (6th Cir. 1996) ("'General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.' Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend [*Ex Parte Young,* 209 U.S. 123 (1908)] beyond what the Supreme Court has intended and held." (citations omitted) (quoting *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir.1993))); *see also Fitts v. McGhee*, 172 U.S. 516, 519-20 (1899) (holding that to name a state's governor solely on the theory that "as the executive of the state, [he or she is], in a general sense, charged with execution of all its laws," is inconsistent "with the

13

fundamental principle that [states] cannot, without their assent, be brought into any court at the suit of private persons"); *Weinstein v. Edgar*, 826 F. Supp. 1165, 1167 (N.D. Ill. 1993) ("[A] theory of liability predicated on a governor's general obligations as the executive of the state is insufficient to avoid the consequences of the Eleventh Amendment."). To be sure, the proposition that a governor may never be sued based on a general duty to enforce the laws of a state is not without controversy. The Supreme Court in *Young* appeared to contradict, without overruling, *Fitts*, in holding that "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of general law, or is specially created by the act itself, is not material so long as it exists." *Ex Parte Young*, 209 U.S. at 157; *see also Johnson v. Rockefeller*, 58 F.R.D. 42, 45-46 (S.D.N.Y. 1972) (denying Governor of New York's motion to dismiss and holding that a governor's constitutional duty to faithfully execute the laws of a state "without more, provides a sufficient connection with the enforcement of the statute to make Governor Rockefeller a proper defendant in this suit").

Ultimately, the apparent confusion among federal courts with respect to what constitutes the appropriate connection between a state official and the enforcement of a state law so as to permit suit against that official does not influence this court's determination that, in this case, the complaint against Governor Snyder must be dismissed. Even accepting that a general duty to enforce the laws of a state may, in some cases, provide a sufficient basis on which to name a governor in a lawsuit challenging the constitutionality of a state law, Plaintiffs have not satisfactorily stated a claim against Governor Snyder under 42 U.S.C. § 1983. Independent of any

14

proscription found in *Fitts* and *Deters* against naming a governor as a defendant solely on the basis of his general duty to enforce the laws of a state, § 1983 requires a plaintiff to plead factual allegations that establish that a particular defendant, while acting under the color of state law, violated the plaintiff's constitutional rights. *See Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) ("[A] plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." (citing *West v. Atkins*, 487 U.S. 42, 48 (1988))). Plaintiffs' lone factual allegation that Governor Snyder appointed a person to a position is insufficient to create a reasonable inference that he deprived Plaintiffs of any rights guaranteed by the Contracts and Takings Clauses of the United States Constitution. Were Plaintiffs challenging the Act's provision authorizing Governor Snyder to appoint emergency managers, or perhaps arguing that the entire emergency manager regime violates the Constitution, Plaintiffs' single factual averment that Governor Snyder appointed an emergency manager *might* be sufficient to state a claim under § 1983. Plaintiffs' challenge, however, is limited to the Act's provision authorizing an emergency manager to modify existing contracts, and the complaint is devoid of any allegation that Governor Snyder was involved in the modification and termination of such lease agreements. Thus, Plaintiffs have not stated a § 1983 claim against Governor Snyder upon which relief can be granted.[2]

---

[2] As a practical matter, Governor Snyder's involvement in this case appears to be unnecessary. Dismissal of Governor Snyder will not deprive Plaintiffs of an opportunity to vindicate any infringement of their constitutional rights. Defendants concede that Roberts is a proper defendant and that any judgment that the Act's provision authorizing

15

### III.  CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 19] is GRANTED IN PARTED and DENIED IN PART.  It is GRANTED to the extent that the complaint is DISMISSED as against Governor Rick Synder.  It is DENIED to the extent that dismissal on the basis of *Burford* abstention, the *Colorado River* doctrine, and the Declaratory Judgment Act is unwarranted.

IT IS FURTHER ORDERED that the June 6, 2012 motion hearing is CANCELLED.

                                                s/Robert H. Cleland  
                                                ROBERT H. CLELAND  
                                                UNITED STATES DISTRICT JUDGE

Dated:  June 8, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 8, 2012, by electronic and/or ordinary mail.

                                                s/Lisa Wagner  
                                                Case Manager and Deputy Clerk  
                                                (313) 234-5522

---

modification of existing contracts is unconstitutional will have substantially the same legal effect irrespective of whether the Governor is a defendant.

S:\Cleland\JUDGE'S DESK\C1 ORDERS\12-10122.NCO.Amend.Ord.Grant.In.Part.Mot.Dismiss.jrc.wpd