UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NCO ACQUISITION, LLC, et al.,

    Plaintiffs,

v.                                                  Case No. 12-10122

RICHARD D. SNYDER, et al.,

    Defendants.
                                          /

**OPINION AND ORDER DENYING "PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)"**

Roy Roberts, Jr., as emergency manager for Detroit Public Schools, unilaterally terminated five lease agreements on January 31, 2012, pursuant to his authority under the Local Government and School District Fiscal Accountability Act, 2011 Public Act 4 section 19(1)(j).  Mich. Comp. Laws § 141.1501 *et seq.*  The lessors in those contracts, four private companies, filed suit against Roberts; Governor of Michigan, Richard Snyder; and Treasurer of Michigan, Andy Dillon, claiming Public Act 4 violates the Contract Clause and Takings Clause of the United States Constitution.  Plaintiffs move to have section 19(1)(j) of Public Act 4 declared facially unconstitutional under the Contract Clause.  The motion has been fully briefed, and the court decides a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(f)(2).  For the following reasons, the court will deny the motion.

**I. BACKGROUND**

The Michigan Legislature enacted the Local Government and School District Fiscal Accountability Act, 2011 Public Act 4 (P.A. 4), effective immediately on March 16,

2011. Mich. Comp. Laws § 141.1501 *et seq.* The statute repealed and replaced the Local Government Fiscal Responsibility Act, 1990 Public Act 72 (P.A. 72). Mich. Comp. Laws § 141.1201 *et seq.* P.A. 4 allows for an "emergency manager" to be appointed to assist local governments that are suffering a financial emergency. Mich. Comp. Laws § 141.1503. Under section 141.1519(1), "[a]n emergency manager may take 1 or more of the following additional actions with respect to a local government which is in receivership, notwithstanding any charter provision to the contrary: . . . (j) Reject, modify, or terminate 1 or more terms and conditions of an existing contract." § 141.1519(1)(j). Michigan Governor Rick Snyder appointed Roy Roberts as the emergency manager for the Detroit Public Schools (the "District") in May 2011.

Plaintiffs NCO Acquisition, LLC; FK North, LLC; FK South, LLC; and Lothrop Associates Limited Partnership each had a lease agreement with the District. (Pls.' First Am. Compl. Ex. B–F, Dkt. # 18-3–7.) On September 16, 2011, Roberts sent a letter to each Plaintiff informing them that their lease agreement with the District had been modified pursuant to P.A. 4 such that it may be terminated upon sixty days prior written notice. (Pls.' First Am. Compl. Ex. H–L, Dkt. # 18-9–13.) The letters then informed Plaintiffs that their respective leases would be terminated effective November 30, 2011, "without further obligation on the part of the District upon such termination." *Id.* Roberts sent a second letter to each Plaintiff on November 30, 2011, that rescinded the September 16, 2011 notice of termination and provided a new notice of termination effective on January 31, 2012. (Pls.' First Am. Compl. Ex. N–R, Dkt. # 18-15–19.)

After the contracts were terminated, P.A. 4 was suspended in August 2012 through the referendum process of the Michigan Constitution, Mich. Const. art. II, § 9,

and has been certified for the November 2012 ballot. Even though P.A. 4 has been suspended, Roberts's actions as emergency manager under the statute, including the termination of Plaintiffs' contracts, remain in effect.

On January 11, 2012, Plaintiffs filed suit against Defendants Roy Roberts, Jr., Richard Snyder, and Andy Dillon, Treasurer of Michigan, each in their official capacity. Plaintiffs claim that the termination of their contracts violates the Contract Clause, U.S. Const. art. I, § 10, cl. 1, and Takings Clause. U.S. Const. amend. V. Plaintiffs now move to have section 19(1)(j) of P.A. 4 pronounced unconstitutional on its face under the Contract Clause.

## II. STANDARD

When deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Legal conclusions and unwarranted factual inferences do not need to be accepted as true. *Id.* at 581–82. Courts grant 12(c) motions "when no material issue of fact exits and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582.

## III. DISCUSSION

Plaintiffs argue that section 19(1)(j) of P.A. 4 is unconstitutional on its face under the Contract Clause. The Contract Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. While the Contracts Clause seems to preclude "any" impairment of contract, "the prohibition is not

an absolute one and is not to be read with literal exactness like a mathematical formula." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428 (1934). A "plaintiff must demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship'" in order to prove a violation of the Contract Clause. *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998) (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).

In conducting this analysis, the court must find "(1) a contract exists, (2) a change in law impairs that contract, and (3) the impairment is substantial." *Mascio*, 160 F.3d at 313. "If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation, such as remedying of a broad and general social or economic problem." *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12 (1983) (internal citations omitted). If there is a legitimate public purpose, the court must then determine "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Id.* at 412. Put more simply, "an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose." *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 25 (1977). Plaintiffs ask the court to find section 19(1)(j) of P.A. 4 unconstitutional on its face, but not as applied to the contracts at issue. (Pls.' Mot. J. Pleadings at 1–2, Dkt. # 32.) Whether a statute is found unconstitutional "as applied" or "on its face" affects the outcome: "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its

face, the State may not enforce the statute under any circumstances." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187,193 (6th Cir. 1997). Consequently, "federal courts do not lightly uphold facial challenges." *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008). A "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Women's Med. Prof'l Corp.*, 130 F.3d at 194 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

It is undisputed that contracts exist between Plaintiffs and the District. And while Roberts unquestionably terminated Plaintiffs' contracts, the pertinent question, for the purpose of resolving this 12(c) motion, is whether section 19(1)(j) of P.A. 4 *on its face* impaired the contracts. That section states: "An emergency manager may take 1 or more of the following additional actions with respect to a local government which is in receivership, notwithstanding any charter provision to the contrary: . . . (j) Reject, modify, or terminate 1 or more terms and conditions of an existing contract." Mich. Comp. Laws § 141.1519(1)(j). As Plaintiffs concede, the enactment of P.A. 4 did not itself immediately affect the contracts at issue. (Pls.' Mot. J. Pleadings at 12, Dkt. # 32.) Section 19(1)(j) merely provides an emergency manager with the ability to modify a contract; if Roberts had chosen not to exercise this power in relation to Plaintiffs' contracts, those contracts would remain unaffected by the statute.

*Buffalo Teachers Federation v. Tobe* discusses a fact-pattern similar to the one before the court. 446 F. Supp. 2d 134 (W.D. N.Y. 2005), *aff'd*, 464 F.3d 362 (2d Cir. 2006). In that case, the New York State Legislature passed a statute creating the Buffalo Fiscal Stability Authority (the "Control Board") whose purpose was to improve

Buffalo's dire financial situation. *Id.* at 136. The statute vested in the Control Board the ability to impose a wage or hiring freeze if necessary to improve Buffalo's budget. *Id.* at 139. The Control Board exercised its vested authority and froze wages for all city employees. *Id.* at 139–40. Employee organizations had collective bargaining agreements with the city of Buffalo school district that guaranteed various salary increases to its employee-members. *Id.* at 137. These organizations sued claiming the enacted statute and subsequent wage freeze violated their collective bargaining agreements under the Contract Clause. *Id.* at 140.

The court explained that the plaintiffs were "limited to 'as applied' challenges" because the statute "itself [did] not diminish or eliminate Plaintiffs' contractual rights, nor [did] it alter or affect in any way Plaintiffs' collective bargaining agreements with the city of Buffalo school district." *Id.* at 141. The court concluded that "the statute, standing on its own, does not substantially impair Plaintiffs' contractual rights." *Id.* Similarly, section 19(1)(j) of P.A. 4 does not affect Plaintiffs' contracts. Only Robert's termination of those contracts pursuant to his authority under the statute impaired the lease agreements. *See also Cranley v. Nat'l Life Ins. Co. of Vt.*, 144 F. Supp. 2d 291, 302 (D. Vt. 2001) (denying plaintiffs' facial challenge under the Contract Clause "because the statute itself, which merely prescribe[d] a procedure for undertaking reorganization if the company and its policy holders approve[d], [did] not diminish[] the contractual rights of the Plaintiffs"). Section 19(1)(j) of P.A. 4 does not, on its face, impair Plaintiffs' contracts.

As the second element in the court's Contract Clause analysis has not been met, it is unnecessary to proceed with any further analysis.

## IV.  CONCLUSION

Accordingly, IT IS ORDERED that "Plaintiffs' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c)" is DENIED.

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2012, by electronic and/or ordinary mail.

        s/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522